[Crim. No. 7831. Third Dist. March 11, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
MARVIN LYLE SCHRIEBER, Defendant and Appellant.

## COUNSEL

Richard J. Asbill for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Eddie T. Keller and Peter J. McBrien, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.\***—Defendant herein was convicted by a jury in the Redding Justice Court of driving while under the influence of intoxicating liquor (Veh. Code, § 23102, subd. (a)). He appealed to the superior court which reversed the conviction. In its memorandum opinion, the court expressed the opinion that section 23126 of the Vehicle Code is unconstitutional and the instruction given the jury thereon was prejudicial. The case was thereafter certified to this court.

The facts of the case are classically typical of the customary drunk driving arrest, the alleged erratic driving first calling the attention of the arresting officers to the defendant, the failure to pass roadside sobriety tests, an alcoholic breath, slurred speech, etc. The arrest occurred at approximately 2:05 a.m. Defendant consented to a blood test which was administered by a licensed technician at 2:45 a.m. Laboratory analysis showed a blood alcohol content of .15 at that time.

A forensic chemist testified as to the general effects of alcohol upon one's driving abilities. He was unable to state what the blood alcohol

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

level of defendant was at the time of the arrest without knowing the drinking habits of the defendant. He did testify that it would require approximately eight 1-ounce drinks of 100 proof alcohol to raise defendant's blood level to that found at 2:45 a.m. in a period from 45 to 70 minutes and that the body would "burn off" alcohol at the approximate rate of .02 percent per hour.

Defendant asserts two basic contentions to support his thesis that section 23126 of the Vehicle Code is unconstitutional, namely, that there is no rational connection between blood alcohol level in a defendant at the time of his offense and that at the time of the taking of the sample inasmuch as no time limit is specified as to the time interval between the two events, and, secondly, that section 23126 deprives a defendant of the presumption of innocence in that it establishes by law a rebuttable presumption that a prescribed blood alcohol level of .10 percent determines that a defendant is presumptively under the influence of alcohol. Furthermore, it requires a defendant to testify against himself to dispel the presumption.

█  It is axiomatic that the test to be applied in any situation wherein a presumption may be relied upon in a criminal case is whether there is a rational connection between the fact proved and the fact presumed. For example, in the case of *Turner* v. *United States* (1970) 396 U.S. 398 [24 L.Ed.2d 610, 90 S.Ct. 642], the court upheld the presumption that heroin found on the defendant was illegally imported into the United States since virtually no heroin is produced in the United States, but the presumption that the cocaine found upon the defendant was illegally imported was not a supportable presumption since cocaine is produced in the United States.

We readily find a rational connection between the fact proved and the fact presumed. Probably, no fact is more firmly established medically than that the ingestion of alcohol in any substantial quantity impairs one's ability to drive a vehicle. The dismal statistic that alcohol is involved in an inordinate percentage of the accidents resulting in death, dispels any claim that there is no rational connection between the consumption of alcohol by a driver and his driving record. (See, Annual Report of Fatal and Injury Motor Vehicle Traffic Accident (1973) Dept. Cal. Highway Patrol.)

█  Defendant focuses his attention on the claimed unconstitutionality of section 23126 of the Vehicle Code upon the failure of the

Legislature to specify a mandatory time interval between the offense and the taking of a blood sample in this case. Defendant contends that the Legislature, in enacting the Vehicle Code provision herein disputed, recognized that some interval of time would elapse between the offense and the arrest therefor and the extraction of the blood sample, but defendant insists that such a time interval should be specified and in any event a lapse of 40 minutes is unreasonable. We do not agree. Section 23126 of the Vehicle Code is an integral part of the legislative process to bar the use of public highways to persons operating vehicles while under the influence of alcohol, and section 23126 of the Vehicle Code must be read in conjunction with sections 13353 and 13354 of said code. Subdivision (a) of Vehicle Code 13353 provides:

"Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. . . ."

In other words, as prescribed by the statute, the test must be incidental to both the offense and to the arrest and the only reasonable interpretation which can be given such language is that no substantial time elapse occurs between the offense and the arrest.

█ In testing the constitutionality of a statute, a cardinal principle is that the legislative act is presumed to be constitutional and unconstitutionality must be clearly shown and doubts resolved in favor of its validity. (See, 5 Witkin, Summary of Cal. Law (8th ed.) § 43, p. 3281; see also, 16 Am.Jur.2d, § 137.)

█ This concept is clearly expressed in the context of the present law in the case of *Zidell* v. *Bright* (1968) 264 Cal.App.2d 867, 869-870 [71 Cal.Rptr. 111]: "A court should interpret legislation reasonably and should attempt to give effect to the apparent purpose of the statute. (*Ivens* v. *Simon* (1963) 212 Cal.App.2d 177, 181-182 [27 Cal.Rptr. 801].) California courts have consistently recognized that a large proportion of traffic injuries and fatalities are due to inebriated drivers. (*People* v. *Duroncelay* (1957) 48 Cal.2d 766, 772 [312 P.2d 690]; *People* v. *Huber*

(1965) 232 Cal.App.2d 663, 671 [43 Cal.Rptr. 65].) Thus there was need for a fair, efficient and accurate system of detection and prevention of drunken driving. (*People* v. *Sudduth* (1966) 65 Cal.2d 543, 546 [55 Cal.Rptr. 313, 421 P.2d 401].) ■ The immediate purpose of Vehicle Code section 13353, the implied consent statute, is to obtain the best evidence of blood alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated. The long-range purpose, is, of course, to inhibit intoxicated persons from driving on the highways. (*Finley* v. *Orr* (1968) 262 Cal.App.2d 656 [69 Cal.Rptr. 137].)"

■ To accept defendant's thesis that in the ordinary course of events defendant may not be inebriated at the time of driving, but inebriated at the time of the taking of the test, we would necessarily be required to presume that an automobile driver would hurriedly gulp down, as in this instance he would have to have done, eight drinks, jump in his car and hope to reach his destination before he became intoxicated. This variety of Russian roulette leaves a very small margin for error, inasmuch as medical studies demonstrate that the majority of ingested alcohol is absorbed by the body within 15 to 20 minutes and that the brain, requiring as it does a large blood supply, is one of the first organs of the body affected. (See *Alcohol and the Impaired Driver* (1968) A.M.A., Comm. on Medicolegal Problems, pp. 16-17.)

The fact that Vehicle Code section 23126 does not fix an ultimate limit as to the time when the prescribed test must be taken and is therefore unconstitutional seems singularly unpersuasive as we have noted. In the first instance, in a state as large as California, with roads far removed from available testing personnel, such a time limit would be impossible to fix. Moreover, the greater the elapse of time the greater the benefit to the defendant, as the alcohol in his system becomes dissipated by the normal body processes: (*In re Martin* (1962) 58 Cal.2d 509, 512 [24 Cal.Rptr. 833, 374 P.2d 801].)

Moreover, defendant is in no way precluded from producing such testimony or evidence as may be available to him to prove his relative sobriety at the time of the alleged offense as contrasted to his inebriation at the time of the taking of the test.

As we have noted earlier, defendant asserts that the establishment of the presumption set forth in section 23126 of the Vehicle Code is violative of due process in that it removes the presumption of innocence with which defendant is clothed, sets at naught the requirement of proof

beyond a reasonable doubt, and deprives the defendant of his right against self-incrimination. None of these arguments is persuasive.

■ Justice Fleming, in the case of *People* v. *Lachman* (1972) 23 Cal.App.3d 1094 [100 Cal.Rptr. 710], a case premised upon a drunk driving conviction, disposes of defendant's contentions in declaring (at p. 1097): "A statutory presumption affecting the burden of proof in a criminal cause does not alter the People's duty to prove defendant's guilt beyond a reasonable doubt. It merely allows proof of an ultimate fact by permitting that fact to be presumed from proof of a preliminary fact. Whether the ultimate fact is proved by direct evidence or by a presumption which arises from proof of a preliminary fact, the defendant's burden of rebuttal remains the same: he need only raise a reasonable doubt as to the sufficiency of the proof of the ultimate fact. (Evid. Code, § 607; *DeWoody* v. *Superior Court,* 8 Cal.App.3d 52, 56-57 [87 Cal.Rptr. 210].)"

In a unanimous decision in *People* v. *Sudduth* (1966) 65 Cal.2d 543 at page 546 [55 Cal.Rptr. 393, 421 P.2d 401], the Supreme Court stated: "Suspects have no constitutional right to refuse a test designed to produce physical evidence . . ." (in that case, a breath sample). At another point, the court in *Sudduth* stated further, at page 546: "The value of such objective scientific data of intoxication to supplement the fallible observations by humans of behavior seemingly symptomatic of intoxication cannot be disputed. (*People* v. *Duroncelay* (1957) 48 Cal.2d 766, 772 [312 P.2d 690].) In a day when excessive loss of life and property is caused by inebriated drivers, an imperative need exists for a fair, efficient, and accurate system of detection, enforcement and, hence, prevention. (See *Breithaupt* v. *Abram* (1957) 352 U.S. 432, 439 [1 L.Ed.2d 448, 452-453, 77 S.Ct. 408].)"

The establishment by law of certain disputable presumptions in criminal cases is neither new nor uncommon. For a discussion of various crimes in which presumptions may be used, see Witkin, California Criminal Procedure, pages 336-339, Witkin, California Criminal Procedure, 1973 Supplement, pages 245-246; *United States* v. *Gainey* (1965) 380 U.S. 63 [13 L.Ed.2d 658, 85 S.Ct. 754].

We would cite the latter case in particular because it dispels both contentions—that section 23126 of the Vehicle Code deprives defendant of the presumption of innocence and of his right to remain silent. Congress enacted a law which provided that: "Whenever . . . the defendant is shown to have been at the site or place where, and at the

time when, the business of a distiller or rectifier was so engaged in or carried on, such presence of the defendant shall be deemed sufficient evidence to authorize conviction, *unless the defendant explains such presence* to the satisfaction of the jury . . . ." (26 U.S.C.A. § 5601(b)(2).) (Italics added.)

In holding the above-quoted law constitutional, the court noted that the rationality of the inference (presence indicating participation in illegal activity) must be viewed in the context of the broad substantive offense it supports. In our case, the scientific establishment of alcohol blood levels in drivers is a more satisfactory method of establishing the guilt or innocence of automobile drivers than subjective observations usually made under less than optimum conditions.

The *Gainey* case, *supra,* even more emphatically disposes of the constitutional issue of a possible violation of defendant's Fifth Amendment rights to remain silent, for it squarely places upon the defendant the duty to explain his presence at the site of a still.

In this case the jury, after being instructed as to the provisions of Vehicle Code section 23126, was further instructed that the defendant's guilt must be found to be beyond all reasonable doubt.

Defendant's reliance upon the case of *DeWoody* v. *Superior Court* (1970) 8 Cal.App.3d 52 [87 Cal.Rptr. 210], is misplaced. The issue in that case turned entirely upon the issue of whether the enactment of section 23126 of the Vehicle Code was an ex post facto law as applied to an arrest made prior to its enactment, and it so cogently held; but it did not hold in any respect that applied prospectively, section 23126 was unconstitutional.

The judgment is affirmed.

Friedman, Acting P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 8, 1975.