### State v. Bean
[Cite as 4 AOA 210]

Case No. S-89-26
Sandusky County, (6th)
Decided June 1, 1990

*John Meyers, Prosecuting Attorney, and Ronald Mayle, for Appellee.*

*David A. Dorobek, for Appellant.*

This matter is before the court on appeal from the Sandusky County Court of Common Pleas wherein, appellant, Walter G. Bean, was found guilty of attempted gross sexual imposition in violation of R.C. 2907.05(A)(3). The facts giving rise to this appeal are as follows:

Eleven-year-old Priscilla Monk lived next door to appellant in August 1988. Priscilla and other members of her family frequently went to appellant's house to use his phone. Priscilla herself often went to appellant's house to watch television.

On August 29, 1988, Priscilla returned from appellant's house in tears. She told her older sister that appellant had "tried to put his hand down her pants." When Priscilla's mother returned, the police were contacted. After

appellant's arrest, he signed a voluntary statement in which he stated that the only time he touched Priscilla was when he lifted her from the washing machine on which she was sitting.

On December 2, 1988, appellant was indicted on one court of attempted gross sexual imposition, a fourth degree felony. The indictment contained a specification that the victim was less than thirteen years old. Appellant was found guilty by a jury on May 26, 1989. He was sentenced to an eighteen month period of incarceration. It is from this conviction that appellant appeals setting forth the following assignments of error:

"1. The trial court committed error prejudicial to the defendant when it denied him his constitutional right to a face-to-face confrontation with the witness against him, without a finding of any necessity for such denial.

"2. The trial court committed error prejudicial to the defendant by not granting a directed verdict of acquittal when the manifest weight of the evidence did not prove guilt beyond a reasonable doubt since the complaining witness did not identify the defendant in court."

In his first assignment of error, appellant contends that he was denied his constitutional right to confrontation since he could not see Priscilla when she was testifying against him in court. Appellant further contends that the court erred in denying him a face-to-face confrontation with Priscilla absent a specific finding of necessity which would outweigh appellant's confrontational rights. Appellee argues that in this case, the need to minimize Priscilla's anxiety outweighed any infringements on appellant's confrontational rights.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to confront accusing witnesses at trial. The United States Supreme Court has stated that the Sixth Amendment reflects a preference for face-to-face confrontation. *Ohio* v. *Roberts* (1980), 448 U.S. 56, 63. Section 10, Article I of the Ohio Constitution provides, in part:

"In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, * * *"

Recently, the United States Supreme Court addressed the issue of the Confrontation Clause in child sexual abuse cases. The defendant in *Coy*

v. *Iowa* (1988), 487 U.S. 1012, was convicted on two counts of engaging in lascivious acts with a child. At his trial, the court allowed the two victims to testify behind a large screen. The victims could not see the defendant at all; whereas, the defendant had a very limited view of the victims. The defendant objected to this arrangement on the basis of the Confrontation Clause. In finding that the defendant's confrontational rights had been violated, the court, in an opinion by Justice Scalia, thoroughly reviewed the history of the Sixth Amendment's Confrontation Clause. Justice Scalia stated:

"We have never doubted, therefore, that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Id.* at 1016.

"* * *

"More recently, we have described the 'literal right to "confront" the witness at the time of trial" as forming 'the core of the values furthered by the Confrontation Clause." *Id.* at 1017. (Citations omitted.)

In tailoring his analysis to the fact pattern at issue, Scalia stated:

"The State can hardly gainsay the profound effect upon a witness of standing in the presence of the person the witness accuses, since that is the very phenomenon it relies upon to establish the potential 'trauma' that allegedly justified the extraordinary procedure in the present case. That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs." *Id.* at 1020.

In *Coy*, the state of Iowa argued that the need to protect the victims outweighed the defendant's Sixth Amendment rights. The Iowa statute at issue contained a presumption of trauma for victims of sexual abuse. However, Justice Scalia rejected the presumption by stating that the court needed to make individualized findings that a particular witness needed special protection. *Id.* at 1021.

A recent Ohio Supreme Court case followed the *Coy* decision. In *State* v. *Eastham* (1988), 39 Ohio St. 3d 307, the defendant was charged with raping his six-year-old stepdaughter. At trial, the judge, the prosecutor, defense counsel and court reporter went into a conference room next to the courtroom. The defendant remained in the courtroom. The victim testified in the conference room while her testimony was watched simultaneously

by the defendant on a video monitor. The defendant objected to this procedure on the basis of the Confrontation Clause.

The Supreme Court of Ohio, in following *Coy,* held:

"We recognize that the protection of child victims of sexual abuse forms an important public policy in this state and across the nation.

"* * *

"However, the record fails to reveal any specific facts upon which the trial court based its finding. No particularized finding concerning the emotional well-being of this child and the necessity for this procedure exists. While attempts to comfort the child are laudable, we must bear in mind that the procedure employed by the trial court severely violated appellant's constitutional right to confrontation. The *Coy* holding makes that clear." *Id.* at 310.

The California Court of Appeals dealt with a fact situation similar to the case at bar in *Herbert* v. *Superior Court* (1981), 117 Cal. App. 3d 661, 172 Cal. 850. The defendant was charged with sexual offenses against a five year old. At a preliminary hearing, the child was reluctant to testify so the court created a unique seating arrangement whereby the defendant and the five year old victim could not see each other. The California Court of Appeals held that the seating arrangement violated the defendant's confrontational rights. In so holding, the court noted the fact that the five year old was the only inculpatory witness presented against the defendant and the fact that a substantial period of time had passed since the alleged incident and the preliminary hearing. Moreover, the court held:

"By allowing the child to testify against defendant without having to look at him or be looked at by him, the trial court not only denied defendant the right of confrontation but also foreclosed an effective method for determining veracity." *Id.* at 668.

In the present case, the court held a competency hearing outside the presence of the jury to determine Priscilla's competency to testify as a witness. At that time, appellant's counsel objected to the seating arrangements. The problem was that from where they were seated, appellant and his counsel could not see Priscilla while she was testifying because of her shortness. Appellant's counsel asked the court's permission to move their seats. The prosecutor objected to appellant moving his seat. However, the prosecutor did not object to appellant's counsel standing so that he could see Priscilla. The prosecutor stated that he

did not want the appellant to be able to look at Priscilla. When the court asked the prosecutor what his justification was for blocking appellant's view, the prosecutor produced an affidavit signed by Priscilla. The affidavit, dated October 19, 1988, read that Priscilla was approached by appellant approximately six weeks before the trial. Priscilla stated that appellant yelled "come here" but Priscilla ran in the opposite direction. Appellant then turned his back and walked away. Based upon this affidavit, the court allowed Priscilla to testify out of appellant's view.

According to *Eastham, supra,* the court in this case should have made a "particularized finding concerning the emotional well-being" of Priscilla and the "necessity" for the seating arrangement of trial. This the court did not do. Rather, the court denied appellant his constitutional right to a face-to-face confrontation simply because the state was able to submit evidence showing that appellant and Priscilla had briefly seen each other since the alleged incident.

We recognize the strong public policy interest in protecting child witnesses in sexual abuse cases. However, such interests must be balanced against a defendant's constitutional rights. In this case, we do not find that the state sufficiently demonstrated that it was *necessary* to prevent a face-to-face confrontation between appellant and Priscilla. With regard to the facts in this case, the state's interest in protecting its witness was not outweighed by appellant's compelling constitutional right to a face-to-face confrontation. Accordingly, appellant's first assignment of error is found well-taken.

In his second assignment of error, appellant contends that the court erred in not granting appellant's directed verdict of acquittal since Priscilla did not identify appellant in court. Specifically, Priscilla could not identify appellant at trial since she could not see him. However, two other witnesses identified appellant as the man that Priscilla claimed sexually abused her. Although Priscilla, in her testimony, used the word "him" to describe appellant, it is evident from the questions Priscilla was asked that she was offering testimony on the actions of appellant. Accordingly, appellant's second assignment of error is found not well-taken.

On consideration whereof, the court finds that the defendant was prejudiced and prevented from having a fair trial, and the judgment of the Sandusky County Court of Common Pleas is reversed. This cause is remanded to said court for

further proceedings not inconsistent with this decision.

*Judgment reversed and cause remanded.*

HANDWORK, P.J., and RESNICK, J., concur.

GLASSER, J., dissents.

GLASSER, J., dissenting.
This case, unlike other reported cases involving a similar confrontation issue, does not present a contrived situation designed to deny appellant the opportunity to confront his accuser. Eye contact and total visual observation was denied in this instance as a result of the small stature of the victim. Although the trial court denied appellant's request to change his position in the courtroom during the testimony of the witness, his counsel was permitted to move to a location where the witness could be fully observed and he was provided with the opportunity to confer with his client during the examination.

Additionally, the position of the majority intrudes on the substantial responsibility and discretion of a trial judge in controlling the courtroom and conducting the trial of a case. This inherent power of the court was reviewed in *Hale v. State* (1896), 55 Ohio St. 210.

These circumstances do not constitute a denial of the appellant's constitutional rights. I must, therefore, respectfully dissent in this matter.